MICHAEL BAILEY
United States Attorney
District of Arizona
KRISTINA L. MORRISON
Assistant U.S. Attorney
Arizona State Bar No. 029646
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone: 602-514-7500
Email: Kristina.Morrison@usdoj.gov

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jorge Alejandro Rojas,<br><br>Plaintiff,<br><br>v.<br><br>Federal Aviation Administration;<br>Department of Transportation,<br><br>Defendants. | CV-16-03067-PHX-GMS<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION RE ESTIMATED COMPLETION DATES** |

Defendants Federal Aviation Administration (FAA) and Department of Transportation (DOT), hereby file their response to Plaintiff's Motion Re Estimated Completion Dates (Dkt. 81). As set forth below, Plaintiff's motion must be denied.

## I.    INTRODUCTION

On March 20, 2019, this Court ordered that the FAA provide a list of estimated completion dates (ECDs) for Plaintiff's unprocessed FOIA requests that were pending as of the date of the complaint, and a list of the individuals responsible for responding to those requests. *See* Dkt. 70; Dkt. 73 at p. 10:19-24. The FAA timely complied with the Court's order on March 27, 2019, providing a list of 104 estimated completion dates pertaining to

80 FOIA requests[1] and of the person(s) from each agency component responsible for responding to the request linked to a particular ECD. Dkt. 74. Plaintiff argues that the agency has been dilatory in providing and complying with ECDs; has provided excessive or unreasonable ECDs; has failed to provide legible records; has improperly asserted a fee assessment; and should allow Plaintiff to file interim administrative appeals. Dkt. 81. He asks that the Court grant his requested relief on each of these issues. *Id.* at p. 9-10.

As explained below, Plaintiff's motion and the relief he seeks must be denied. As reflected by the Defendants' detailed record, including sworn declarations and supporting evidence, the FAA has made good faith efforts to provide reasonable ECDs and has made significant and continued progress processing the related FOIA requests. In addition, Plaintiff's motion must be denied because he raises issues and seeks remedies that are outside of the Court's jurisdiction.

## II.    THE FAA PROVIDED REASONABLE ECDs, MADE IN GOOD FAITH, AS EVIDENCED BY THE AGENCY'S SIGNIFICANT PROGRESS PROCESSING THE RELATED FOIA REQUESTS.

As of the date of this filing, over 71 percent of the 104 ECDs have been completed. An updated chart detailing the status of each ECD is attached (Exhibit A). Thirty ECDs remain open, with all but nine of them slated to be completed before the years' end. *Id.*; Ex. B, Summary Chart. Although the Agency has issued responses closing out 74 ECDs and processed over 12,000 pages of records within the last sixteen weeks, Plaintiff identifies some instances where an agency component was not able to meet its ECD as originally anticipated and seeks an order that the FAA "provide timely responses." *See* Ex. A; Ex. H, ¶ 10; Dkt. 81 at 3, 9. In addition, he seeks an order for the production of a set number of hundreds of pages each month per FOIA request.

However, a fairer description of the record does not call for any such orders. The record

---

[1] There are more ECDs than FOIA requests because in several instances more than one agency component has been assigned to respond to one FOIA request.

shows Defendants met, if not exceeded, the vast majority of the ECDs.  In addition, taking a comprehensive look at the progress made thus far, the record reflects:

1) the ECDs provided on March 27, 2019, were reasonable based on the available information at that time, and in some situations, were overly ambitious in a good faith attempt to quickly process the identified FOIA requests;

2) in the instances in which ECDs were not met due to the volume of the records and/or the complexity of the request, the FAA provided reasonable revised ECDs and has already met many of those revised ECDs; and

3) for ECDs in 2020 and 2021 involving a large volume of records, the agency has already provided rolling productions for some of them, and intends to provide rolling productions for the rest.

In sum, an order to provide "timely responses" and a set number of pages with each production is not warranted.  In addition, as explained below, changes to the ECD schedule are not feasible for a variety of logistical reasons.

*1. The FAA Provided Realistic Estimates and is Making Reasonable Progress in Reducing its Backlog of Pending Requests.*

In its March 27, 2019 filing, the FAA provided the declaration of Geraldine Gour, the Acting Executive Director, Office of Administration and Management, who outlined the various agency components to which a FOIA request can be assigned, the decentralized nature of the FAA's FOIA program, and the process by which ECDs were determined by her agency component. Dkt. 74-2.  ECDs were calculated by each component based upon numerous factors, including:  the number of pages yielded from the search; the available business hours in a day; in some cases, an estimated document review rate of 15 pages per hour; the time required to coordinate with other program offices (if applicable); previous experience in processing similar requests of similar scope; the component's current workload, including FOIA and non-FOIA obligations; and the time required to perform legal review and finalize the decision letter.  *Id.* at 6, ¶ f; *See also* Exs. C-L, Agency Component Declarations.  In addition, ECDs can be impacted by emergencies outside of

the FAA's control, by changes in the number and nature of FOIA requests the agency receives, and by the legal obligation the FAA has to process incoming requests. Dkt. 74-2 at 6, ¶ g. Within that context, the FAA provided 104 ECDs with dates ranging from as short as within a week of the March 2019 filing and as long as the Fall of 2021. *See* Ex. A. Although the bulk of the ECDs have already been completed, Plaintiff asserts that ECDs slated for 2020 and 2021 are "excessive and unreasonable," based upon the date the request was originally submitted and the purpose of the FOIA requests. Dkt. 81 at 3.

The FAA maintains that the ECDs, including the few slated for 2020 and 2021, are sound. The standard by which to assess the time needed to complete its review of records is whether the agency "exercises due diligence in responding to the request" and "demonstrates reasonable progress in reducing its backlog of pending requests." 5 U.S.C. § 552(a)(6)(C)(i)-(ii); *see also*, *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 790 (D.C. Cir. 2018) (Courts "should assess whether an agency is acting with due diligence and making reasonable progress in reducing backlogs, including by availing itself of tools to improve its efficiency."). The FAA has met that standard.

In Fiscal Year 2018, the FAA received 11,407 FOIA requests in addition to 2,427 requests that remained pending at the beginning of that fiscal year. *See* Ex. M, FY 2018 FOIA Annual Report, at 12. Of note, the agency experienced a notable increase in the number of FOIA requests received as compared to Fiscal Year 2017. *Id.* at 42. Whereas the FAA was able to process 10,320 FOIA requests in Fiscal Year 2017, it processed 11,032 requests in Fiscal Year 2018. *Id.* The average number of days pending for complex FOIA requests in Fiscal Year 2018 was 382 days. *Id.* at 29.

In this case, agency components have responded to 74 of the 104 ECDs detailed in the March 2019 filing. Ex. B. Forty-one (41) of those responses were provided <u>in advance of</u> the initial ECD, and eighteen (18) were provided on the initial deadline. *Id.* The remaining 15 completed ECDs were completed by the revised ECD deadline or within 3 business days of the initial ECD deadline. *Id.* All but nine of the remaining ECDs are slated to be completed before the end of 2019. *Id.* Notably, the FAA has

completed the majority of the ECDs despite having 2,802 requests pending at the start of Fiscal Year 2020. *See* Ex. M at 12.

This data demonstrates that the FAA has been diligent in making reasonable progress to reduce the backlog of pending requests. Furthermore, the fact that most of the ECDs were met at or in advance of their deadlines shows that they were realistic and attainable. *See* DOJ Office of Information Policy Guidance, https://www.justice.gov/oip/oip-guidance-1 (noting that in providing requesters an ECD, the agency should use "its best judgment based on the processing of similar requests in the past, average processing times, and any other available resources" and "should give the requester a *realistic* estimate") (emphasis added). In only a few instances, the FAA was overly ambitious in its estimates for timely responding to the pending FOIA requests identified, and in those cases, the agency continues to work in good faith to respond to them by the revised ECDs it has provided to Plaintiff.

The agency does not deny that the FOIA requests at issue were submitted in 2015 and 2016; however, the appropriate benchmark for determining the viability of an ECD is March 27, 2019 – the date the ECDs were provided – because that was the date by which each agency component had completed its initial review of the pending requests, analyzed the factors at play in an attempt to realistically process those requests to completion, and calculated reasonable ECDs. *See* Dkt. 74-2, ¶ 9(a)-(k); Exhs. C-L.

The FAA currently has seven ECDs in 2020 and two ECDs in 2021 for complex FOIA requests. *See* Ex. A; Ex. B at 2; Ex. C, ¶ 10; Ex. D, ¶¶ 7-8; Ex. G, ¶ 9; Dkt. 74-2 at ¶ 9(e). The potentially responsive pages identified during the initial search on these requests range from between 1,500 and over 30,000 pages. *Id.* In addition to the volume of documents at issue, some requests involve documents that require coordination with multiple lines of business within the FAA. *See* Ex. C, ¶ 10; Ex. E, ¶ 10; Ex. G, ¶ 8. In multiple instances, the agency sought Plaintiff's cooperation in refining or narrowing the scope of the request so that it could be processed more quickly. *See* Ex. C, ¶ 12; Ex. D, ¶ 6; Ex. E, ¶¶ 2-4. In most instances, Plaintiff declined to do so. *See id.* For instance,

when AGI staff asked Plaintiff if he would narrow the scope of Request 2016-4963, he declined, requiring the agency to proceed with its review of approximately 30,000 pages of records. Ex. D, ¶¶ 6-7. While Plaintiff opted to keep this request as broad as originally stated, the time necessary to process it will logically be higher than less complex requests that encompass a smaller universe of documents.

The ECDs Plaintiff challenges range from between 350 and 916 days for completion from the filing of the ECD Notice and are in line with the agency components' estimated rate of review. *See e.g.*, Ex. D, ¶ 8 (averaging 1,000 pages per month); Dkt. 74-2, ¶ 9(f) (five hours of review each business day at a rate of 15 pages per hour); Ex. G, ¶ 9. In FY 2018, the FAA processed 985 complex requests, with the longest processing time of 2,100 days. Ex. M at 24, 27. The overall average number of days pending for complex requests is 382 days. *Id.* at 29. The ECDs Plaintiff challenges fall within this range. A summary of these ECDs and the reasons for the ECD date is provided below.

| FOIA Number | ECD | Component | Notes |
|---|---|---|---|
| 2016-2233 | 8/24/2020 | AOA | Responsive records are expected to include a daily schedule for the former FAA Administrator, with meeting invitations including attachments, as well as other records. Each day of his daily schedule for 122 days includes a range from 30 to 300 pages, resulting in a large volume for review. Review may involve consultation with other federal agencies or entities for submitter review. |
| 2016-2810 | 12/4/2020 | AOA | Initial search returned 5,617 pages of records, which must be reviewed for both responsiveness and exemptions. |
| 2016-4857 | 4/3/2020 | ATO | ATO anticipated several thousand records to review for responsiveness and exemptions. Subsequent searches have confirmed that there are at least 2,307 pages of records that must be reviewed, including a significant amount of |

| | | | potentially deliberative information that is time consuming to review.<br><br>Interim rolling productions begin on September 30, 2019. |
|---|---|---|---|
| 2016-4857 | 3/11/2020 | AOA | Initial search returned 2,872 pages of records, which must be reviewed for both responsiveness and exemptions. |
| 2016-5076 | 4/3/2020 | ATO | The initial request asks for chats and emails in the account of an ATO contract employee for three specific time periods, with no search terms provided. There are approximately 1,556 pages that must be reviewed, a substantial portion of which is expected to involve personnel actions that require a more detailed review and coordination with FAA's Office of Human Resources.<br><br>However, Plaintiff has since indicated that he will provide search terms; if that occurs, the ECD may be shortened if the search terms decrease the volume of records to be reviewed.<br><br>Interim rolling productions begin on September 30, 2019. |
| 2016-5455 | 4/3/2020 | ATO | ATO's search of emails and their attachments indicate there are over 12,000 pages to be reviewed.  Interim rolling productions begin on September 30, 2019. |
| 2016-9226 | 4/3/2020 | ATO | ATO's search of emails and the anticipated number of attachments to review indicate there are several thousand pages of records that will need to be reviewed. Interim rolling productions begin on September 30, 2019. |
| 2016-4963 | 8/30/2021 | AGI | Initial search resulted in approximately 30,000 pages of records.  Multiple interim responses have been provided.  Most recently, 2,908 pages were provided in an interim response. |

| 2016-7329 | 9/28/2021 | AFN-400, ACQ | Initial search returned 15,536 pages of records that must be reviewed for responsiveness and exemptions. |
|---|---|---|---|

*See* Ex. A, Ex. C, ¶¶ 10-11; Ex. D, ¶¶ 5, 9; Ex. G, ¶ 9.  Ultimately, the ECDs the agency has provided are realistic and should remain in place.

2. *The FAA Has Taken Reasonable Steps to Increase Its Efficiency in Processing Pending Requests.*

Plaintiff points to a few examples in which revised ECDs were provided and/or responses were provided after the initial ECD.  Dkt. 81 at 3-4.  Although the agency is committed to meeting the initial ECDs provided, it maintains that it has not "violated" an ECD when providing a revised ECD or providing documents shortly after the initial ECD.  As evident by their name "Estimated Completion Dates" are simply **estimates**.  The Department of Justice Guidance on ECDs states that "[a]s with any estimate, it is not unexpected that it might change over time.  During the course of processing a request, agencies might find that processing will take less time than initially thought or might take more time than initially thought."  https://www.justice.gov/oip/oip-guidance-1.  In this case, reasons for the agency needing to revise some ECDs include unexpected volumes of records needing to be processed and reviewed (Ex. D, ¶ 5); unanticipated medical-related absences of key staff members (Ex. I, ¶ 9); additional coordination with other program offices where records required review by individuals with specific expertise (Ex. C, ¶ 8); and unexpected complexity of search and review (Ex. C, ¶ 8; Ex. I, ¶ 8).

Nevertheless, the agency has taken numerous steps to address its efficiency in processing the FOIA requests related to the ECDs.  First, a contract paralegal within FAA's Office of the Chief Counsel began tracking all of Plaintiff's outstanding FOIA requests and the status of the agency's responses to them.  Ex. H, ¶ 9.  She is sending out weekly reminders to the agency component about upcoming ECDs.  *Id.*  She also makes phone calls as necessary to ensure that the processing efforts are on track and logs the responses that have been issued every week.  *Id.*  Finally, she routinely requests that the agency component notify her immediately if it appears an ECD will not be met.  *Id.*

8

Second, with the exception of three revised ECDs, the agency components have provided Plaintiff an interim response with any documents already processed at the same time it provided the revised ECD. Ex. C, ¶ 8(a), (c); Ex. I, ¶¶ 6(d)-(e). To date, only 11 of the original 104 ECDs were revised, five of which were ultimately completed by the revised ECD. Ex. B; Ex. C, ¶ 8(a), (c); Ex. I, ¶ 6(d).

Third, the agency has hired additional contract support to assist in processing Plaintiff's requests as efficiently as possible. *See* Ex. J, ¶ 3. The FAA hired a contractor in April of 2019, specifically to assist in processing Plaintiff's FOIA requests and appeals. Ex. G, ¶ 6. Unfortunately, the contractor unexpectedly resigned a few weeks later. *Id.* Nevertheless, the FAA is bringing on new temporary contract support. It acquired funding to hire five contract paralegals for 120 days, who will assist the FAA's program offices in processing Plaintiff's requests on or before the ECD. Ex. J, ¶ 3.

Additionally, FAA components have dedicated a significant portion of their limited resources to ensuring that Plaintiff's requests are processed efficiently. For example:

1. ATO currently has three full-time employees dedicating 75% of their time to processing Plaintiff's FOIA requests. Ex. C, ¶¶ 4, 9.
2. AGI's FOIA point of contact allocates 50% of her business day, and has worked late and on weekends, processing Plaintiff's requests. Ex. D, ¶ 10.
3. AHR's FOIA point of contact allocates 80% of her time processing the requests. Ex. F, ¶ 8.
4. ACR staff are spending a significant amount of their time processing Plaintiff's requests, in addition to performing their normal non-FOIA related duties. *See* Ex. F, ¶¶ 3-4; Ex. I, ¶ 10.

Furthermore, as explained above, the FAA acquired funding to hire additional contract paralegals to assist in processing Plaintiff's FOIA requests. Ex. J, ¶ 3.

Finally, agency components have been provided guidance on issuing ECDs to those who request it, have been instructed not to provide an ECD that lands on a weekend or holiday, and, in the event this has already occurred, have been instructed to inform Plaintiff

9

in advance that the response will be sent out on the next business day.  Ex. K, ¶¶ 11-13; Ex. I, ¶ 5.  By way of example, FOIA Nos. 2016-3413 and 2016-4555 were assigned ECDs that inadvertently fell on a federal holiday (Monday, May 27, 2019).  Ex. A at pp. 7, 9. Although the agency component sent the agency responses to Plaintiff the next business day, steps have been taken to avoid this situation in the future, or in the alternative, to communicate with the requester so as to clear up any misunderstanding.  *Id.*; Ex. I, ¶ 5.

3. *The Agency Intends to Provide Rolling Productions for FOIA Requests With Revised ECDs and With ECDs in 2020 and 2021, Albeit Without a Set Number of Pages to be Produced Each Month.*

The FAA provided interim responses in multiple instances in which a revised ECD was provided, and has already provided complete responses to five requests where the ECD was revised.  Ex. B; Ex. C, ¶ 8; Ex. I, ¶ 6(c).  For the remainder of the revised ECDs, the agency intends to begin rolling monthly productions and is evaluating a start date for when these productions will begin.  Ex. D, ¶ 8; Ex. I, ¶ 6(e)-(f).

In addition, agency components have evaluated the nature of those FOIA requests with an estimated completion date in 2020 and 2021, as well as the logistics associated in reviewing and producing responsive documents, and intend to make rolling productions in advance of the ECDs as follows:

- o FOIA Number 2016-005076: ECD 4/3/2020 - rolling productions to begin **September 30, 2019,** and the agency will provide monthly disclosures up and until the ECD.

- o FOIA Number 2016-005455: ECD 4/3/2020 - rolling productions to begin **September 30, 2019,** and the agency will provide monthly disclosures up and until the ECD.

- o FOIA Number 2016-009226: ECD 4/3/2020 - rolling productions to begin **September 30, 2019,** and the agency will provide monthly disclosures up and until the ECD.

- o FOIA Number 2016-004963: ECD 8/30/2021 – rolling productions **have already begun,** and the agency will provide monthly disclosures up and until the ECD.

- o FOIA Numbers 2016-004857 (ECD 3/11/2020); 2016-002233 (ECD 8/24/2020), 2016-2810 (ECD 12/4/2020), and 2016-7329 (ECD 9/28/2021) – rolling productions to begin **October 31, 2019**, with monthly productions made in response to these requests in sequential order, beginning with records responsive to 2016-004857 and ending with records responsive to 2016-007329.

Ex. C, ¶ 11; Ex. G, ¶ 7. This schedule is currently in place, and the agency components are processing all of Plaintiff's FOIA requests with this schedule in mind. *Id.*

In contrast, Plaintiff asks the Court to order rolling productions to begin for all of these requests on the same day (September 1, 2019), and to set a minimum production of 300-400 pages across the board. Dkt. 81 at 4. There are nine requests with ECDs in 2020 and 2021, and such an order would require the agency to process between 2,700 and 3,600 pages per month until the first of these ECDs is met, in addition to those pages processed to meet the 2019 ECDs. The FAA respectfully requests that such an order is unnecessary and unmanageable. The reason is that one size does not fit all in regards to the types of documents each component must search for and review. For one request, the agency's review may involve unremarkable business records that any number of employees can review, whereas another request may involve documentation that, for example involves military and other law enforcement entities, where only specific individuals have the expertise to review them. Ex. G, ¶ 8. Furthermore, Plaintiff's position does not take into account those FOIA requests with ECDs that are slated to be completed in 2019 and the need to devote resources to them as well. That means that if the program offices were ordered to produce a set number of pages for each request pending, it would impact their ability to meet the ECD already identified for another FOIA request.

Ultimately, the schedule outlined by the agency above more accurately considers the specific documents and staffing needs involved in processing those requests. Furthermore, it is more reasonably and realistically calculated to preserve and build upon

11

the progress already made in handling the ECDs by ensuring that all of the estimated completion dates have the greatest likelihood of being met. Therefore, a court order is not required, or alternatively, should mirror the schedule already devised by the agency.

### III.    PLAINTIFF RAISES OTHER ISSUES THAT FALL OUTSIDE THE SCOPE OF THIS CASE.

Plaintiff raises a number of other issues that fall outside the scope of this case. Plaintiff's complaint raised claims pertaining to: (1) the agency's response to six FOIA requests (*see* Dkt. 1, ¶¶ 11, 25, 39, 57, 70, 84, 110-16); and (2) the agency's failure to provide Estimated Completion Dates for eight additional FOIA requests, "among others." *See id.* at ¶¶ 97, 117-20. As to the first claim, the Court addressed that claim through its rulings, which required the FAA to produce documents responsive to some FOIA requests without redactions. *See* Dkt. 26, 27, 37, 48. As of February 28, 2019, Plaintiff agreed that the FAA had complied with the Court's order. Dkt. 68 at 3; *see also* Dkt. 73, Transcript Hearing at 5:14-17 ("In terms of providing the documents that this Court has required the FAA to provide, the FAA has done that. The FAA has provided those without redactions, other than those that Mr. Rojas and Mr. Pearson have agreed to.")

As to the second claim in his Complaint, at the end of the March 20, 2019 Status Conference, the Court ordered the FAA to provide specific ECDs for all of Plaintiff's FOIAs pending as of the date of his complaint. Dkt. 73 at 10-11. In accordance with this order, the FAA filed the ECDs on March 27, 2019. Dkt. 74. On April 5, 2019, the Court ordered Plaintiff to file a "notice with the Court detailing whether he objects in any way to the notice of Estimated Completion Dates," and allowed Plaintiff to file a motion "regarding his disagreement with Defendants' estimated completion dates. . . ." Dkt. 76. Therefore, as the record reflects, the first claim has been addressed, and the only remaining issue in this case is the extent to which Plaintiff disagrees with the specific Estimated Completion Dates provided by the agency, as referenced in the parties' February 28, 2019

Joint Status Report (Dkt. 68)[2].

Plaintiff's claims as to the legibility of records produced; the ability to file interim administrative appeals; and the agency's denial of a fee waiver request are outside the scope of this law suit and require administrative exhaustion.[3]  However, to the extent the Court considers these arguments, the agency addresses each in turn.

### 1. Illegible records

Plaintiff argues that the agency provided illegible documents in response to 2016-2956, that Plaintiff immediately notified the FAA of the problem, and that the FAA has failed to provide legible documents to him.  Dkt. 81 at 6.  In support, he attaches the Office of Civil Rights' interim response letter and ten out of 113 pages produced that had legibility issues.  *Id.* at 43-52.  However, Plaintiff only referenced one page with legibility issues when he contacted the agency component about it.  Ex. I, ¶ 12, Attach. A at 1.  In addition, contrary to Plaintiff's contention, the agency responded once it was notified of the problem.  Ex. I, ¶¶ 11-14, Attach. A.   For the sake of completeness, the FAA attaches its subsequent correspondence to Plaintiff and legible records that were provided to him.  *Id.*, Attach. A. Furthermore, the agency has also sent Plaintiff additional pages that he did not previously identify as having legibility issues prior to the filing of his motion.  *See id*, Attach. B.    Accordingly, this issue is moot.

### 2. Interim Appeals

Plaintiff argues that the FAA is "shutting off Plaintiff's appeal rights" and asks the Court to allow him to file administrative appeals for interim responses he receives.  *See* Dkt. 81 at 5-6.  As an initial matter, Plaintiff has not been prevented from appealing the

---

[2] In accordance with the fully executed settlement agreement, dated July 11, 2019, the issues pertaining to attorney's fees and costs, sanctions, and referral to the Special Counsel are not issues remaining before the Court. *See* Ex. N, Settlement Agreement.

[3] In his motion, Plaintiff also challenged the adequacy of the search conducted by agency component ATO in response to FOIA 2016-2233, which was an ECD assignment. In accordance with the fully executed July 11, 2019, Settlement Agreement, this issue is no longer pending before the Court. *See* Ex. N.

final responses to the ECD assignments.  Of the 74 final responses that Plaintiff has received, he has appealed 17 of them.  Ex. G, ¶ 14.  Plaintiff's motion does not identify the specific FOIA requests he seeks to appeal prior to receiving a final response, however, there are six revised ECDs for which the FAA is currently providing or intends to provide rolling responses, as well as eight original ECDs in 2020 and 2021 that are scheduled for rolling productions with monthly interim responses beginning later this year. For the reasons explained below, Plaintiff's request to submit interim appeals must be denied.

First, for the five revised ECDs that have already been completed, the FAA provided a final response by the revised completion date.  *See* Ex. B.  Thus, Plaintiff has not been denied the ability to appeal due to the limited number of revised ECDs provided.

Second, by allowing the FAA to provide a final response before allowing a requester to file an administrative appeal, the agency can conduct a comprehensive rather than a piecemeal review of the agency component's response.   A requester can appeal a variety of issues, including redactions, withholding of records, and adequacy of searches. Providing for one global review of a specific FOIA response allows for continuity and greater efficiency in responding to an appeal.  Ex. G, ¶ 13.

Third, allowing for interim appeals will place an undue burden on the already taxed resources the FAA draws upon to process the current docket of appeals.  At the beginning of Fiscal Year 2018, the FAA had 98 pending appeals.  Ex. M at 16.  It received an additional 38 appeals and ultimately processed 49 appeals by the end of Fiscal Year 2018. *Id.*  As such, the FAA has been able to make some headway in reducing the backlog of pending appeals.  *Id.* (showing eleven fewer pending appeals at the end of FY 2018 as opposed to the beginning of the year).  However, should the Court allow Plaintiff to file interim appeals, this will likely erase any forward progress the agency has been able to achieve.  *See* Ex. G, ¶ 15.  The FAA plans to make monthly interim responses on the six remaining revised ECD assignments, which could potentially result in Plaintiff filing six appeals *every month* through November 2019.  In addition, monthly rolling productions in one of the 2021 ECD assignments have already begun, with eight more to follow in

September and October 2019. Thus, such an order could cause an exponential increase in the number of appeals the agency must process. *Id.* This situation would be unmanageable because only one individual within the FOIA Office processes every administrative appeal that the FAA receives. *Id.* at ¶ 11. Finally, there is no legal basis to treat Plaintiff differently than any FOIA requester who is awaiting a final response to a FOIA request that may be multi-assigned to different program offices, and/or requires rolling productions due to the volume of the responsive records. The FOIA statute, DOT regulations and DOJ Guidance place no such burden on any agency.

### 3. The Agency's Final Administrative Action on FOIA 2016-9154 Was Valid, and Plaintiff's Challenge to It is Beyond the Scope of This Litigation.

FOIA 2016-9154 (Request 9154) was a request for which the Court ordered the FAA to provide an ECD. Ex. A at 16. The FAA assigned it an ECD of April 8, 2019, and provided Plaintiff with its final administrative response on that date. *Id.* The response explained that the agency had timely provided Plaintiff with a fee estimate to process the request, but that Plaintiff had not agreed to pay the fees. *See* Dkt. 81 at 84-85. Because the FAA has provided the relief the Court ordered pertaining to this request, no further relief can be granted. *Citizens for Responsibility & Ethics in Wash. v. DOI*, 503 F. Supp. 2d 88, 101 (D.C. Cir. 2007) (noting that once a party obtains relief as to a specific request under the FOIA, "federal courts have no further statutory function to perform") (internal citation omitted). However, should the Court choose to consider Plaintiff's challenge to the agency's decision, the agency responds as follows.

The FAA is typically required to respond to a FOIA request within 20 Federal working days. *See* 49 C.F.R. § 7.31; 5 U.S.C. § 552(a)(6)(A)(i). However, this time period does not begin until the request is actually received by the FOIA office of the agency component that maintains the records sought. *See* 49 C.F.R. § 7.27(a)(2); § 7.31; *see also* DOT FOIA Reference Guide, Section V, https://www.transportation.gov/sites/dot.gov/files/docs/resources/individuals/foia/218026/foia-reference-guide-revised-oct-26-2017.pdf. Furthermore, the FAA may in certain

circumstances extend the time limit by an additional ten Federal working days. *See* 5 U.S.C. § 552(a)(6)(B)(i); 49 C.F.R. § 7.31(a); § 7.34. In addition, the FAA's time limit to render an initial determination may be tolled "[w]hen the requester has not stated a willingness to pay fees as high as anticipated by the [agency]." 49 C.F.R. § 7.35(b)(2); 5 U.S.C. § 552(a)(6)(A)(ii).

Here, Plaintiff submitted Request 9154 on September 3, 2016 to the FAA's FOIA component, AFN-400. Dkt. 81 at 84. On September 14, 2016, the FAA informed Plaintiff the request was assigned to another component, i.e., AGC-100; indicated "unusual circumstances" pertained to the request; and invoked a ten-day extension due to the fact that that the agency had to search for and collect records outside of AGC-100. Ex. K, ¶ 6, Attach. A. The request was routed to AGC-100 on the same day. *Id.* On October 18, 2016, AGC-100 provided Plaintiff with a fee estimate of $6,640. *Id.* at ¶ 7, Attach. B. In response, Plaintiff did not agree to pay the fees, but instead indicated the fee estimate was untimely and indicated he was appealing the fee estimate. *Id.* at ¶ 8, Attach. C. Plaintiff did not submit a fee waiver request or an appeal of a fee waiver denial.[4]

The agency's actions here were justified for a number of reasons. First, Plaintiff submitted this FOIA request on a non-business day (Saturday, Sept. 3, 2016). The next business day was Tuesday, September 6, 2016.[5] Ex. K, ¶ 5. On September 14, 2016, the FAA invoked a ten-business day extension due to unusual circumstances. *Id.*, ¶ 6, Attach. A. AGC-100 therefore had until October 18, 2016[6] (20 business days after September 6, 2016, plus the ten-business day extension) to provide the fee estimate. *See* Dkt. 81 at 85. Therefore, the October 18 fee estimate was timely.

---

[4] If Plaintiff is not required to exhaust his remedies, the Court is in the position of having to conduct a direct review of as many as 104 FOIA responses and the FAA is deprived of the chance to resolve a challenge to each response without litigation.

[5] September 5, 2016 does not count as a business day, as it was a federal holiday.

[6] October 10, 2016 does not count as a business day, as it was a federal holiday.

16

Second, "fee estimates" are not appealable under DOT regulations.  Under 49 C.F.R. § 7.32, a requester may appeal a denial of a request for records, a denial of a fee waiver request, or a denial of expedited processing.  Plaintiff's fee estimate "appeal" was not a proper appeal.  He did not submit a fee waiver request, and the FAA did not deny one.  Rather, Plaintiff disagreed with the fee estimate, thus tolling AGC-100's deadline to respond.  49 C.F.R. § 7.35(b)(2); 5 U.S.C. § 552(a)(6)(A)(ii).

Third, the FAA appropriately informed Plaintiff that he could agree to pay the fees or, in the alternative, work with the agency to narrow or reformulate his request.  Dkt. 81 at 85.  Plaintiff did not pursue those options.

Ultimately, Plaintiff's claim is not properly before this Court, and even if it is, the agency's actions were justified and supported by the applicable FOIA regulations.

**IV.    CONCLUSION**

For the reasons set forth above, Plaintiff's motion must be denied.

Respectfully submitted this 15th day of July, 2019.

MICHAEL BAILEY
United States Attorney
District of Arizona

*s/Kristina L. Morrison*
KRISTINA L. MORRISON
Assistant U.S. Attorney

17

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

Michael W. Pearson
Curry, Pearson & Wooten, PLC
Attorneys at Law
814 West Roosevelt
Phoenix, Arizona  85007
mpearson@azlaw.com
*Attorneys for Plaintiff*

*s/Brian Wolfe*
U.S. Attorney's Office

18