**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jorge Alejandro Rojas, | No. CV-16-03067-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Federal Aviation Administration, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff Jorge Alejandro Rojas' Motion Re Estimated Completion Dates (Doc. 81). For the following reasons the motion is denied.

**BACKGROUND**

The current motion continues a long-lived dispute between Rojas and the FAA regarding the many requests Rojas has submitted to the FAA under the Freedom of Information Act ("FOIA"). Rojas' Complaint contained multiple allegations regarding Rojas' FOIA requests, but his allegations broadly fall within two groups. First, Rojas listed six specific FOIA requests and generally alleged that the FAA failed to timely provide estimated completion status updates, that it failed to adequately respond, and that it failed to respond to his appeals of its production decisions. (*See* Doc. 1 at 3–11.) Next, Rojas alleged that the FAA had established a pattern or practice of failing to provide estimated completion dates ("ECDs") for his requests. He specifically alleged eight FOIA requests, "among others," for which he had not received estimated completion dates.

/ / /

Rojas brought three separate claims: (1) a FOIA violation through failure to comply with statutory deadlines, (2) a FOIA violation through withholding of agency records, and (3) a FOIA and Administrative Procedure Act violation through failure to provide ECDs and "complete administrative action." (*See id.* at 12–13.) Rojas requested seven forms of relief: orders requiring (1) reasonable searches for responsive records, (2) provision of ECDs, (3) disclosure of all responsive non-exempt records, (4) production of a Vaughn Index, (5) production of records without assessment of fees, (6) a special investigation under 5 U.S.C. § 552(a)(4)(F), and (7) the payment of attorneys' fees and costs. (*Id.* at 14.)

The FAA moved for summary judgment on the first group of FOIA requests—*i.e.*, the six named requests in the first group. The Court granted summary judgment for three requests and denied for three requests. (Doc. 26.) A status conference followed, at which the Court determined that the FAA had waived its right to raise additional objections to Rojas' FOIA requests by not raising them in its summary judgment motion. (*See* Doc. 48 at 2.) The Court also ordered the FAA to provide responsive documents for Requests 8952, 9570, and 4019, with redactions only if agreed to by Rojas. (*Id.* at 3.)

The FAA requested an extension of time to fully respond to Request 9570, which the Court granted. But rather than timely providing documents for Requests 8952 and 4019, the FAA provided responses to all three requests by the extended deadline granted for Request 9570 only. (*See id.*) When it provided the documents, the FAA had made redactions to which Rojas had not agreed, in direct violation of the Court's order. (*Id.*)

At the next status conference, the Court denied the FAA's request for a second round of summary judgment motions. The Court also gave the FAA thirty more days to respond to Rojas' document request. The FAA soon filed notice that it had complied. But again, the documents had extensive redactions to which Rojas had not agreed. So, the Court ordered the FAA to show cause as to why it should not be held in civil contempt for violating the Court's orders on multiple occasions. (*Id.* at 6.) The Court also directed the parties to meet and attempt good faith resolution of the remaining issues without further court intervention. (*Id.*) The show-cause hearing was continued and eventually vacated

when the parties indicated that the FAA was finally in compliance with the Court's orders. (*See* Doc. 56 at 1.) The parties' next joint status report indicated that the FAA would be making supplemental responses to some of Rojas' requests, and that the parties were again disputing whether the FAA had provided all responsive documents. (Doc. 58 at 2.) The Court ordered the FAA to provide supplemental responses. (Doc. 59.)

In the next round of joint status reports, the parties indicated that the following issues remained outstanding in the case: (1) whether the FAA had engaged in a pattern or practice of failing to provide ECDs to Rojas' requests, (2) whether the FAA should be sanctioned for its conduct, (3) whether Rojas was entitled to attorneys' fees and costs, and (4) whether a referral for investigation by the Office of Special Counsel was warranted. (Doc. 68 at 2–3.)

At the subsequent hearing, the Court ordered the FAA to provide ECDs for all outstanding requests that had been submitted by Rojas by the time he filed his Complaint. (Doc. 73 at 10.) The FAA complied. (*See* Doc. 74.) The Court then directed Rojas to file notice of his disagreement with the ECDs provided, if any, and a motion regarding the ECDs, if needed. (Doc. 80.) Rojas then filed this motion. (Doc. 81.) After Rojas filed it, the parties filed a joint stipulation of dismissal, in which they agreed to dismiss all issues in the case except for those addressed by the current motion regarding the ECDs.

**DISCUSSION**

**I.     Modification of ECDs and Late Production**

The FOIA requires agencies to "establish a telephone line or Internet service that provides information about the status of a request to the person making the request using the assigned tracking number, including . . . an estimated date on which the agency will complete action on the request." 5 U.S.C. § 552(a)(7)(B).

Rojas' primary contention here is that in some instances, the FAA has unreasonably revised its initial ECDs and that in other instances the FAA has failed to meet the ECDs it gave. As ordered by this Court, the FAA provided ECDs to Rojas. Many of the ECDs have now passed and Rojas has received documents responsive to his requests. As of the

date of the FAA's response to Rojas' motion, 71.15% of the 104 ECDs had been completed, leaving 30 ECDs pending. Of those thirty, nine requests have ECDs after January 1, 2020. Two have ECDs that extend into 2021.

Of the 74 completed ECDs, the FAA completed 40 before their ECDs, and 18 were completed on the original ECD. For 11 requests, the FAA provided revised ECDs after further reviewing the amount of work it would take to respond to Rojas' requests. The FAA has yet to miss a revised ECD. (*See* Doc. 85-2 at 24.)

Rojas particularly disagrees with ECDs that extend into 2020 and 2021. But the FAA's response sets forth the reasonable explanations for ECDs given. The ECDs are, by definition, estimates. The FAA based the ECDs on a variety of factors, including how many pages searches yielded, the number of business hours available to process requests, time required to coordinate with multiple offices responding to requests, previous processing times for similar requests, the agency's workload outside of Rojas' requests, and time needed for legal review and finalization. (*See* Doc. 85 at 3.) For the nine requests that have been assigned ECDs in 2020 or 2021, the FAA concluded, based on a combination of those factors, that the requests could not be completed sooner. Rojas has not demonstrated that the FAA's ECDs were unreasonable or given in bad faith. And for many of the requests with extended ECDs, Rojas declined to refine or narrow the scope of his request so that it could be processed faster. (*See* Doc. 85 at 5–6.) In these circumstances, the Court declines to second-guess the agency's determinations regarding its own work capacity. Thus, Court intervention regarding the ECDs is not warranted here.

Rojas also complains that the FAA did not meet some of the original ECDs—and the FAA admits as much. But for those requests, it did make productions shortly after the ECD. In fact, for each of those requests, the FAA completed its response within three business days of the ECD. Since, again, the ECDs are estimates, a production made within three business days of an ECD is not unreasonable and does not warrant judicial intervention.

///

## II.  Rolling Productions

Rojas also requests that the Court order rolling productions for all requests that have ECDs after January 1, 2020. He requests an order directing that the FAA be required to produce a certain number of pages per month on each request, with the amount set to increase on January 1, 2020 for any remaining requests. The FAA, in turn, has proposed a schedule for each of the requests that have ECDs in 2020 or 2021. While the FAA's proposed schedule does not set a specific monthly page quota for each request, it does require monthly productions for each one. The risk of the FAA's proposed schedule, of course, is that it would allow the FAA to make only small monthly productions and then simply revise the ECDs for those requests, thereby dragging out production even further.

However, for the reasons outlined in the FAA's Response, a specific page quota for each month is not necessary or even workable here. The Petitioner has not demonstrated that the FAA has the capacity to supply any particular monthly-rolling quota. The FAA has represented that it will make monthly productions, and it has provided ECDs for each of the requests. How to meet those ECDs is best left to the discretion of the agency at this point. The FAA is most familiar with its capacity as well as its limitations. Given the FAA's representations regarding its commitment to the production schedule it has proposed, as well as the reasonableness of its ECDs, the FAA should not view this decision as carte blanche to drag out production of these requests. Should the FAA do so, Rojas will have recourse in the courts for the FAA's continued non-compliance.

The FAA should begin rolling productions on Rojas' requests as outlined in their response. (See Doc. 85 at 10–11.)

## III.  Interim Appeals

Rojas next requests that the Court require the FAA to allow Rojas to appeal productions made on a rolling basis instead of appealing only after the production is completely made. The FOIA allows requesters to administratively appeal "adverse determinations" to FOIA requests. *See* 5 U.S.C. § 552(a)(6)(A)(i). Department of Justice guidelines on FOIA appeals suggest that agencies provide for intermediate appeals when

productions are made on a rolling basis. *See OIP Guidance: Adjudicating Administrative Appeals Under the FOIA*, Department of Justice (updated Feb. 14, 2019), https://www.justice.gov/oip/oip-guidance/Adjudicating%20Administrative%20Appeals%20under%20the%20FOIA.

Requiring the FAA to allow interim appeals of its rolling productions is not necessary here. Although DOJ guidelines do suggest that interim appeals be allowed, they do not require that they be. And neither does the FOIA itself. Other than the DOJ guidance document, Rojas points to no legal authority to support his argument that interim appeals be required here. He also points to no authority that would allow the Court to order the relief he seeks. And the resolution of Rojas' FOIA requests has already been bogged down for years. Requiring the FAA to allow appeal of each interim production made could further inhibit the timely resolution of this already long-lived dispute. Considerations of efficiency suggest that it would streamline the appeals process to have Rojas file a single appeal of a completed production. The opposite scenario—the potential for multiple appeals per month—is undesirable here. For those reasons, the Court declines to order the FAA to allow interim appeals of the rolling productions.

## IV. Assessment of Fees

The FOIA allows agencies to assess fees for requests so long as certain requirements are met. If an agency fails to comply with the FOIA's time limits for responding to requests and appeals, the agency is generally barred from assessing search fees. 5 U.S.C. § 552(a)(4)(A)(viii)(I). If the agency "has determined that unusual circumstances apply . . . and the agency provide[s] a timely written notice to the requester" regarding that determination as required by 5 U.S.C. § 552(a)(6)(B), the agency may still assess fees it if complies within ten days of the original twenty-day time limit.[1] *Id.* (II)(aa). Further, if the

---

[1] Paragraph (B)(iii) defines "unusual circumstances" for purposes of (6)(B) as:

(I)     the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request

(II)    the need to search for, collect, and appropriately

agency has determined that unusual circumstances apply and that "more than 5,000 pages are necessary to respond to the request," the agency may still assess fees so long as it provided timely written notice to the requester under (a)(6)(B) "and the agency has discussed with the requester . . . how the requester could effectively limit the scope of the request." *Id.* (bb).

Request 9154 was submitted on September 3, 2016. (Doc. 81 at 84.) Because September 3 was a Saturday, and the following Monday was a federal holiday, September 6 was the day the clock began to run. On September 14, within the original twenty-day period for response by the agency, the FAA acknowledged receipt of Request 9154 and informed Rojas that it had determined that "unusual circumstances" applied because "it [was] necessary to search for and collect the requested records utilizing an office that is separate from the office(s) processing the request. (Doc. 85-3 at 52); *see also* 5 U.S.C. § 552(a)(6)(B)(iii)(I). The FAA's letter also invited Rojas to discuss reformulation of the request or an alternative time frame for processing the request. (Doc. 85-3 at 52); *see also* 5 U.S.C. § 552(a)(6)(B)(ii).

The FAA's response on September 14 thus complied with the requirements for notice under (a)(6)(B). For that reason, because the agency had determined that unusual circumstances existed and that more than 5,000 pages would be necessary to respond to the request, it was allowed to assess fees under 5 U.S.C. § 552(a)(4)(A)(vii)(II)(bb).

Rojas contends that the agency cannot assess fees for the request because the FAA's September 14 letter did not specify that the agency had concluded that its response to the request required more over 5,000 pages of documents. (Doc. 89 at 11.) But he misreads the statute. In order to assess fees, the FAA was only required to "determine[] that unusual circumstances apply and more than 5,000 pages are necessary to respond to the request"

> examine a voluminous amount of separate and distinct records which are demanded in a single request; or
>
> (III) the need for consultation, which shall be conducted with all practicable speed, with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein.

so long as "the agency has provided a timely written notice to the requester in accordance with [§ 552(a)(6)(B) and the agency has discussed with the requester via written mail . . . how the requester could effectively limit the scope of the request."  5 U.S.C. § 552(a)(4)(A)(viii)(II)(bb).  Paragraph (A)(viii) does not require the FAA to tell Rojas that it had concluded that the response would require more than 5,000 pages.

And neither does paragraph (6)(B).  Rather, it requires only that the agency set forth the unusual circumstances it had determined applied, notify Rojas that the request could not be completed within the ten-day extension, and "provide the person an opportunity to limit the scope of the request so that it may be processed within that time limit or an opportunity to arrange with the agency an alternative time frame for processing the request."  *Id.* (6)(B)(ii).  The agency's letter met those requirements.  Because the agency provided the notice required by (6)(B), the agency may assess fees for Request 9154.

## CONCLUSION

For these reasons, further Court intervention here is not needed.  Because Rojas admits in his Reply that the FAA has provided legible copies of the records he complained of, the Court does not address that issue.

**IT IS THEREFORE ORDERED** that Plaintiff Jorge Alejandro Rojas' Motion Re Estimated Completion Dates (Doc. 81) is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall file, **within seven (7) days** of the date of this Order, a joint report outlining whether, after the parties' Joint Notice of Stipulation of Partial Dismissal (Doc. 84) and this Order, any issues remain in this action.

Dated this 26th day of August, 2019.

_____
G. Murray Snow
Chief United States District Judge